UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Timothy Owens,   Civ. No. 15-3320 (PAM/TNL)

        Plaintiff,

v.   **MEMORANDUM AND ORDER**

American Arbitration Association, Inc.

        Defendant.

---

This matter is before the Court on Defendant American Arbitration Association, Inc.'s Motion to Dismiss. For the reasons that follow, the Motion is granted.

**BACKGROUND**

Plaintiff Timothy Owens was President and CEO of Voyager Bank from 2004 to 2011. His employment contract with the bank's owner, VSFC, provided that any disputes arising out of the employment contract were subject to binding arbitration in Minneapolis "in accordance with the Employment Arbitration Rules of the American Arbitration Association . . . ." (Sellers Aff. (Docket No. 11) Ex. 1 ¶ 39.) After Voyager fired Owens in 2011, he brought a lawsuit against Voyager, VSFC, and several individuals in Hennepin County. Defendants in that case moved to compel arbitration and the state court granted that motion in 2012.

The arbitration proceeded before a three-arbitrator panel, which ultimately awarded Owens more than $3 million in damages. (Id. Ex. 8.) Early in the process, one of the

arbitrators disclosed that he had a "brief" professional relationship with the law firm representing Owens, Anthony Ostlund Baer & Louwagie P.A. After the award, the bank defendants claimed that they learned that the relationship was more extensive than the arbitrator indicated in his disclosures—that in fact the arbitrator had represented Anthony Ostlund in a federal lawsuit. Those defendants moved to disqualify the arbitrator and to void the panel's orders. Owens contends that the bank defendants' counsel were involved in the previous federal lawsuit and knew from the beginning the arbitrator's very small role in that lawsuit. He notes that the bank defendants only raised the issue of the arbitrator's relationship with Anthony Ostlund after the bank lost the arbitration.

The AAA's administrative review council reviewed the bank defendants' request for disqualification. According to Owens, the AAA did not allow the challenged arbitrator to present any evidence and did not allow Owens to file any reply other than his initial opposition to the motion to disqualify. According to the AAA, it followed its regular procedures for reviewing requests for disqualification. The review council removed the arbitrator, but declined the request to void the panel's orders. The bank defendants then asked the remaining two members of the panel to void the orders. The two-arbitrator panel rejected the bank's request in August 2013, and thus the $3 million award in Owens's favor stood.

The bank defendants then sought to vacate the arbitration award in the Hennepin County case, and Owen sought to confirm the award. In February 2014, the Hennepin County court granted the bank's motion and denied Owens's motion, finding that the third

arbitrator's evident partiality warranted vacating the award. Owens v. VFSC, Inc., No. 27CV1316297, 2014 WL 8266279 (Minn. Dist. Ct. Feb. 24, 2014). Although Owens initially appealed that decision, he eventually dismissed the appeal, apparently having settled with the bank.

Owens then brought the instant Complaint against the AAA, raising claims for breach of contract, unjust enrichment, tortious interference with contract, and tortious interference with prospective economic advantage. Owens claims that the AAA failed to provide "impartial administration" of the arbitration as it was required to do, and was unjustly enriched as a result. (Compl. ¶¶ 60, 68.) The tortious interference claims contend that the AAA interfered with Owens's contracts with Voyager Bank.

**DISCUSSION**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the non-moving party. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to

raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

"Because an arbitrator's role is functionally equivalent to a judge's role, courts of appeals have uniformly extended judicial and quasi-judicial immunity to arbitrators." Olson v. Nat'l Ass'n of Sec. Dealers, 85 F.3d 381, 382 (8th Cir. 1996) (citing cases). Arbitral immunity "extends beyond arbitrators themselves to organizations that sponsor arbitrations." Id. "Arbitral immunity protects all acts within the scope of the arbitral process." Id.

These extraordinarily well-settled principles do not deter Owens. He argues that there is a distinction between a quasi-judicial function to which immunity applies and an administrative function, to which immunity ostensibly does not apply. But this is a false distinction and one that has no support in the caselaw. The cases are clear that an organization that sponsors arbitration is immune from liability for acts it takes "within the scope of the arbitral process." Id. Indeed, one court of appeals specifically stated that a sponsoring organization's "refusal to disqualify [an] arbitrator . . . falls within the scope of [arbitral] immunity." Jason v. Am. Arbitration Ass'n, 62 F. App'x 557 (table), 2003 WL 1202934, at *1 (5th Cir. Mar. 7, 2003). It is clear, then, that a sponsoring organization's decision to disqualify an arbitrator would qualify for the same immunity.

The cases Owens cites are not persuasive. He relies most heavily on cases from California state court, but those cases are not helpful to his arguments. Indeed, one of the decisions recognized that a challenge to the sponsoring organization's conduct within the scope of the arbitration would be subject to immunity. Baar v. Tigerman, 189 Cal. Rptr. 834,

839 (Cal. Ct. App. 1983).

Nor does this Court's decision in In re National Arbitration Forum Trade Practices Litigation assist Owens here. 704 F. Supp. 2d 832 (D. Minn. 2010). In that case, there were allegations that the "arbitrations" the National Arbitration Forum performed were not arbitrations at all, but that the NAF would regularly defer to credit-card companies as to the appropriate decision in a given case, rather than having arbitrators make that decision. That decision denied the NAF's motion to dismiss on the basis of arbitral immunity, holding that if the plaintiffs' allegations of bias and corruption were true, "then it cannot fairly be said that NAF's actions were 'within the scope of the arbitral process.'" Id. at 836 (quoting Olson, 85 F.3d at 382). Owens's allegations here are nothing like the allegations in NAF.

There can be no doubt that the decision to remove an arbitrator for partiality is within the scope of the arbitral process. Owens's claims against the AAA are barred by arbitral immunity.

**CONCLUSION**

Owens's claims against the AAA are barred by the doctrine of arbitral immunity. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion to Dismiss (Docket No. 7) is **GRANTED**; and

    2.    This matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   December 9, 2015

                                    *s/Paul A. Magnuson*
                                    Paul A. Magnuson
                                    United States District Court Judge